UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL RICHTER,<br><br>        Plaintiff,<br><br>v.<br><br>XL INSURANCE AMERICA INC. and<br>GALLAGHER BASSETT SERVICES, INC.,<br><br>        Defendants. | 4:23-cv-04094-RAL<br><br><br>**DEFENDANT XL INSURANCE AMERICA INC.'S RESPONSE IN OPPOSITION OF PLAINTIFF'S MOTION TO COMPEL** |

Defendant XL Insurance America Inc. ("XL") respectfully submits its Response in Opposition to Plaintiff's Motion to Compel pursuant to Fed. R. Civ. P. 37(a)(3)(B)(ii) – (iv).

## I.  INTRODUCTION

Gallagher Bassett Services, Inc. ("GB"), the third-party administrator in this case, handled Plaintiff's workers' compensation claim at issue in this action.  XL was not involved or notified about Plaintiff's workers' compensation claim until ***six days before this action was filed***. Notwithstanding that fact, Plaintiff seeks information, documents, and testimony regarding irrelevant and confidential, proprietary trade secrets from XL.  This far-reaching discovery includes information and documents regarding XL's unrelated insureds, unrelated policies, unrelated claims, unrelated lawsuits and actions, and unrelated protocols, guidelines, and procedures.

The requested discovery is nothing more than a fishing expedition given that XL was not involved in the handling of the claim at issue.  Nevertheless, Plaintiff proffers rote arguments and case law that is factually distinguishable to support his unfounded fishing expedition.  Plaintiff posits that XL has a duty of good faith and fair dealing and is liable for

1

GB's conduct.  This argument misses the point.  There is no case law to justify battering the door wide open to discovery regarding XL's irrelevant claims handling practices in other, unrelated matters when XL was not the entity that handled ***this claim***.  Simply stated, the discovery Plaintiff seeks is not relevant to the claims at issue in this action and the Motion to Compel should be denied.

## II. BACKGROUND

Plaintiff filed the above-captioned action on June 7, 2023, against XL and GB alleging bad faith stemming from the handling of Plaintiff's workers' compensation claim arising from a September 6, 2017 motor vehicle accident. (*See* Aff. of William C. Garry, ¶ 2, Attachment 1). XL was neither involved in the handling of Plaintiff's workers' compensation claim nor knew about the proceeding in front of the Department of Labor at the time it was occurring. Rather, GB was handling the claim, including the action with the Department of Labor, on XL's behalf.[1]

On November 21, 2023, Plaintiff served identical sets of interrogatories and requests for production of documents in this action on XL (the "Discovery Requests") and GB.  (*See* Aff. of William C. Garry, ¶¶ 3-4, Attachments 2 and 3).  On February 5, 2024, XL served its Objections and Responses to Plaintiff's Discovery Requests (the "Discovery Responses"). (*See* Aff. of William C. Garry, ¶ 5, Attachment 4).  As part of its Discovery Responses, XL informed Plaintiff that its "first notice of Plaintiff's claim for workers' compensation benefits was on June 1, 2023."  (*Id.*,  Response to Interrogatory No. 10). Moreover, XL informed

---

[1] Plaintiff asserts that "XL amended its Answer [in the Department of Labor action] and admitted that the work injury was and remained a major contributing cause of Plaintiff's condition, and Defendant XL agreed to be responsible for Plaintiff's workers' compensation benefits, including his medical benefits." Motion, pp. 2-3. To clarify, GB submitted such pleadings in that action on behalf of XL.

Plaintiff that it did not engage in activities on Plaintiff's claim, that it did not process Plaintiff's claim, that it did not deny Plaintiff's workers' compensation benefits, and instead referred Plaintiff to GB's discovery responses given that GB alone handled Plaintiff's workers' compensation claim. (*Id.*, at nos. 5, 12, 14). XL indicated it would produce certain documents upon entry of a protective order and XL did so by producing the non-privileged, responsive documents it had relating to this claim, i.e., the claims services agreement between XL and GB, the XL policy at issue, and the first notice of this matter to XL that occurred six days before the lawsuit was filed.[2]

On February 21, 2024, Plaintiff sent XL a letter regarding alleged deficiencies in XL's Discovery Responses (the "Discovery Letter").  (*See* Aff. of William C. Garry, ¶ 6, Attachment 5). On March 5, 2024, counsel for Plaintiff and counsel for XL held a meet-and-confer conference by phone in an effort to resolve the discovery dispute. (*See* Aff. of William C. Garry, ¶ 7). In this meet-and-confer conference, XL explained to Plaintiff why the cases he cited to in his Discovery Letter were inapplicable (as explained further *supra*). (*Id.*)  Counsel for XL advised that it would be serving a written response to Plaintiff's letter and suggested another meet-and-confer conference once Plaintiff received that written response in order to attempt to resolve any lingering disputes without the need for court intervention. (*Id.*). Contrary to Plaintiff's assertions throughout its Motion, and as evidenced by XL's persistence in continuing to meet and confer, XL never refused to cooperate with the discovery process. Rather, there existed, and still exists, a legitimate dispute between the Parties regarding

---

[2] XL notes that Plaintiff indicates that a draft protective order was being circulated around the time of February 7, 2024, and XL "finally responded" to e-mails regarding the draft protective order on February 12, 2024.  (Motion, p. 3).  Contrary to this hyperbolic language, that was a mere five days later.

whether the requested information and documents are relevant given XL did not handle Plaintiff's workers' compensation claim.

On March 11, 2024, Plaintiff served XL with a draft Fed. R. Civ. P. 30(b)(6) notice of deposition that raised many of the same topics that were at the heart of the Parties' dispute regarding written discovery. (*See* Aff. of William C. Garry, ¶ 8, Attachment 6). The Parties had a preliminary meet-and-confer conference regarding the proposed deposition topics on April 16, 2024, during which counsel for XL advised that written objections and responses to the deposition notice were forthcoming. (*See* Aff. of William C. Garry, ¶ 9). Plaintiff's counsel requested that XL provide dates for its 30(b)(6) deposition, and the Parties discussed having another meet-and-confer conference after XL served its written objections to the draft notice of deposition in an attempt to resolve the issues without court intervention. (*Id.*).

Accordingly, counsel for XL provided potential dates for a 30(b)(6) deposition and on April 26, 2024, Plaintiff served XL with a 30(b)(6) Deposition Notice, scheduling XL's deposition for June 4, 2024. (*See* Aff. of William C. Garry, ¶ 10, Attachment 7). On May 8, 2024, XL served its written objections and responses to Plaintiff's Deposition Notice as well as a response to the Discovery Letter, rebutting Plaintiff's allegations that XL did not fully and completely respond to the Discovery Requests, as is required of it under the Federal Rules of Civil Procedure and law. (*See* Aff. of William C. Garry, ¶¶ 11-12, Attachments 8 and 9).

Counsel met and conferred again on May 9, 2024, regarding the scope of the Deposition Notice and the Discovery Requests. (*See* Aff. of William C. Garry, ¶ 13). Despite good faith efforts, the Parties were unable to resolve their discovery disputes such that Plaintiff's counsel cancelled the June 4, 2024 deposition. (*See* Aff. of William C. Garry, ¶ 14,

Attachment 10). Contrary to Plaintiff's assertions in its Motion, XL neither refused to attend the deposition, indicated that it would so refuse, nor failed to show up for a scheduled deposition. Rather, Plaintiff cancelled XL's deposition given the Parties' discovery dispute. That dispute is now before this Court on Plaintiff's Motion to Compel, which XL respectfully submits should be denied.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) permits discovery "regarding any nonprivileged matter that is ***relevant*** to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action . . . the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." (Emphasis added). In particular, the party seeking discovery must make a "threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required." *Fair v. Royal & Sun All.*, 278 F.R.D. 465, 471 (D.S.D. 2012) (citations omitted). "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case." *Id.* (citations omitted).

Critically, "[w]hile the standard of relevance in the context of discovery is broader than in the context of admissibility (Rule 26(b) clearly states that inadmissibility is no grounds for objection to discovery), ***this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery. Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues***

5

*in the case*." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citations omitted) (emphasis added); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) (same); *Murphy v. Kmart Corp.*, 255 F.R.D. 497, 501 (D.S.D. 2009) (same).

**IV.  ARGUMENT**

For ease of reference, *see* attachment to this Brief (entitled "Exhibit B"), for the specific discovery requests and deposition topics at issue in Plaintiff's Motion (collectively referred to as "Disputed Discovery").  Though certainly wide-ranging, the fatal commonality in the Disputed Discovery is that Plaintiff is seeking confidential, proprietary trade secrets relating to other insureds, other claims, and other policies not at issue in this action.  Plainly stated, none of this information is relevant.

**A.** **Plaintiff Has Failed to Satisfy His Burden of Establishing a Threshold Relevancy to the Disputed Discovery that Seeks Confidential, Proprietary Trade Secret Information and Documents**

Despite Plaintiff's insistence otherwise, discovery is only permissible when relevant to a party's claim and proportional to the needs of the case. Fed. R. Civ. P. 26(b).  Dispositive here is that a "threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Murphy,* 255 F.R.D. at 501 (citations omitted); *Burke v. Ability Ins. Co.*, 291 F.R.D. 343, 348 (D.S.D. 2013) (citations omitted) (recognizing that the party who seeks discovery must "make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required."); *see also* Fed. R. Civ. P. 26(b)(2)(C)(iii) ("the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the scope permitted by Rule 26(b)(1).")

6

Plaintiff has failed to make that threshold showing of relevance in this case.  In his Motion and Discovery Letter, Plaintiff generally posits that the purpose of the Disputed Discovery is to establish or show a pattern of XL's claim handling procedures and decisions and to demonstrate that XL handled the claim at issue here in a similar fashion.  That utterly ignores the reality that XL's claim handling is not at issue here.  The claim handling was carried out by GB, the third-party administrator, who is also a defendant in this action and from whom Plaintiff is seeking the exact same discovery.  While Fed. R. Civ. P. 26 is "widely recognized as a discovery rule which is liberal in scope and interpretation," it should not "be misapplied so as to allow fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1992).  A fishing expedition is precisely what Plaintiff is engaged in as to XL.

The cases Plaintiff relies on in his Motion underscore this point.  Those cases involve scenarios where the discovery sought was against the ***entity involved in the handling of the claim***, which is not XL in this case.[3] Given the lack of analogous case law, Plaintiff pivots to

---

[3] See *Schultz v. Sentinel Ins. Co., Ltd*, No. 4:15-CV-04160-LLP, 2016 WL 3149686, *15 (D.S.D. June 3, 2016) (insurer was handling and adjusting the claim at issue), *Rounds v. Hartford*, No. 4:20-CV-04010-KES, 2021 WL 4150838 (D.S.D. Sept. 13, 2021), *adopted*, No. 4:20-CV-04010-KES, 2022 WL 703204 (D.S.D. Mar. 9, 2022) (analyzing a discovery dispute in a matter where the insurer investigated plaintiff's claim); *Lyon v. Bankers Life & Cas. Co.*, No. CIV. 09-5070-JLV, 2011 WL 124629 (D.S.D. Jan. 14, 2011) (same); *Kirschenman v. Auto-Owners Ins.*, 280 F.R.D. 474 (D.S.D. 2012), *objections overruled,* No. CV 09-4190-KES, 2012 WL 13040020 (D.S.D. Apr. 18, 2012) (same); *Diana Stedillie vs, Milford Casualty Insurance Company, et aI*.,4:22-cv-04048; *Gowan v. Mid Century Ins. Co.*, 309 F.R.D. 503 (D.S.D. 2015) (same); *Hofer v. United Financial Casualty Company d/b/a Progressive Northern Insurance Company*, CIV 15-4181 at Doc. 26 (same); *Lillibridge v. Nautilus Ins. Co.*, No. CIV. 10-4105-KES, 2013 WL 1896825 (D.S.D. May 3, 2013) (same); *Haukaas v. Liberty Mut. Ins. Co.*, No. 4:20-CV-04061-KES, 2022 WL 1719412 (D.S.D. May 27, 2022) (same); *Frazier v. Farmers Mut. Ins. Co. of Nebraska*, No. 4:19-CV-04132-LLP, 2020 WL 3036361 (D.S.D. June 5, 2020) (same); *Hurley v. State Farm Mut. Auto Ins. Co.,* Civ. No. 10-4165-KES, 2012 U.S. Dist. LEXIS 63602, 2012 WL 1600796, *5 (D.S.D. May 7, 2012) (same); and *Brown Bear v. Cuna Mut. Grp.,* 266 F.R.D. 310, 329 (D.S.D. Nov. 5, 2009) (same).

his refrain that XL has a non-delegable duty of good faith, which somehow entitles Plaintiff to far-reaching discovery as to XL. Motion, p. 12. But what is relevant to Plaintiff's legal theory of liability is the decision-making process, and whether the entity rendering that decision "intentionally denied . . . a claim without a reasonable basis." See *Johnson v. United Parcel Serv., Inc.*, 2020 S.D. 39, ¶¶ 31-32, 946 N.W.2d 1, 9–10; see *Nye v. Hartford Acc. & Indem. Co.*, No. CIV. 12-5028-JLV, 2013 WL 3107492, at *5 (D.S.D. June 18, 2013) (emphasis added) ("To prove that *The Hartford* acted in bad faith, Mr. Nye must show that *The Hartford* had no reasonable basis for denying benefits, and that *it* acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of policy benefits.").  As XL is not the entity who rendered any decisions concerning Plaintiff's workers' compensation claim, discovery into XL's unrelated decisions in unrelated cases is simply not relevant.  That Plaintiff seeks to impute GB's claim handling decisions to XL does not change the core inquiry here, which remains GB's handling of the claim  (*See* Aff. of William C. Garry, Attachment 1, ¶ 10).[4]

Moreover, contrary to Plaintiff's reliance on Rule 37(d)(1)(A)(i) and the case law interpreting that rule, XL did not fail to appear for its deposition. Rather, XL agreed to appear and designate a 30(b)(6) deponent on topics pertaining to ***this claim*** and XL's relationship with GB as it relates to ***this claim***.[5] But the Disputed Discovery goes far beyond that. For

---

[4] XL also does not agree that even if it had handled the claim, the Disputed Discovery would be relevant given the far-ranging nature of it.  In particular with respect to other IME reports from Dr. Nipper, as GB aptly explained in response to Plaintiff's Motion to Compel against GB, "whether an unrelated adjuster [at GB] received an IME report from Dr. Nipper has no relevance to whether the adjuster handling Plaintiff's workers' compensation claim acted in bad faith."  Dkt No. 28, pp. 9, 15.

[5] Plaintiff's reliance on *Deneke v. Menard, Inc.,* No. 5:21-CV-05068-LLP, 2022 WL 2237827, at *3 (D.S.D. June 22, 2022) is unfounded as that case dealt with a corporate designee that did not appear for a 30(b)(6) deposition.   Here, in contrast, XL remained fully prepared to present a designee to

8

instance, Requests for Production nos. 12, 15, 16, and 17 seek documents related to XL's workloads and responsibilities, policies, guidelines, manuals, incentive practices over the prior ten years, human resources and salary information, and documents concerning efforts to decrease loss ratios. (*See* Aff. of William C. Garry, ¶ 3, Attachment 2). Similarly, Deposition Topics nos. 1, 2, 7, 8, 9, 10, 12, 17, 18, 19, 20, 23, and 24 seek testimony related to XL's policies, guidelines, manuals, claim handling practices over the prior ten years, and/or relationships with its third-party administrators. (*See* Aff. of William C. Garry, ¶ 10, Attachment 7). Plaintiff purportedly seeks this information "in order to understand Defendant's approach to claim evaluation and the behavior of Defendant's employees." (*See* Aff. of William C. Garry, ¶ 6, Attachment 5; Motion, p. 15). This purported justification makes no sense given that XL personnel played no role in handling Plaintiff's workers' compensation claim.  Indeed, there is not a scintilla of relevance to guidelines, manuals, protocols, prior claim handling practices, etc. that govern XL's handling of unrelated claims when XL was not the entity that handled **this claim**.

Likewise, Plaintiff's Interrogatory no. 6 and Request no. 14 seek information and documents related to every claim for which Dr. Jeffrey Nipper has been retained and the reports he has generated for the past ten years.  Plaintiff's stated bases for the relevancy of such information is to shore up his allegation that XL "performed a sham investigation of Plaintiff's workers' compensation claim" and to prove that XL "had a pattern and practice of using Dr. Nipper's biased IME's [sic] to deny claimant's their workers' compensation

---

testify about relevant topics.  It is Plaintiff who decided to cancel the deposition.  Further, XL serving written objections to the Deposition Notice after it was served and conducting multiple meet-and-confers regarding the dispute is not only compliant with the Federal Rules of Civil Procedure given the information sought was outside the scope of those rules, but also compliant with Local Rule 37.

benefits." (*See* Aff. of William C. Garry, ¶ 6, Attachment 5; Motion, p. 10). Again though, XL was not involved in retaining Nipper or performing the investigation for ***this claim*** nor did XL even know that Dr. Nipper was retained such that Plaintiff's proffered basis for such information is completely illusory. Similarly misguided is Deposition Topic no. 13, which seeks information regarding XL's employees who played a role in the decision to deny Plaintiff's claim. No such information or individuals even exist.

Plaintiff's Interrogatory no. 20, Requests nos. 18, 19, 21, 22, and 23, and Deposition Topics nos. 4, 5, 6, 29, 30, and 31 seek information, documents, and/or testimony related to XL's determinations and the relationship with third-party entities in regard to unrelated workers' compensation claims, bad faith or unfair claims practices actions against XL, regulatory actions, consumer complaints filed against XL involving its handling of workers' compensation claims, and pleadings, affidavits, and transcripts related to such claims for the past five or ten years.  Plaintiff's proffered basis for seeking such information is that it "provides information regarding the claims handlers in this action" and goes to establish that XL had a pattern and practice of wrongfully investigating, evaluating, and denying workers' compensation claims. (*See* Aff. of William C. Garry, ¶6, Attachment 5; Motion, pp. 12, 17, 18-19). Yet, there were no XL claim handlers involved in this action.  Thus, XL's handling of unrelated claims has no relevance to the handling of ***this claim***, which was done exclusively by GB.

Notwithstanding that XL was in no way involved in handling Plaintiff's claim, Plaintiff's suggestion that XL has refused to fully answer the Discovery Requests is unfounded.  The responses advised that XL did not have notice of Plaintiff's claim until days before this action was filed.  Additionally, when asked about specific claim handling activities

such as investigations, evaluations, decisions and the like, XL truthfully disclosed that it did not engage in such activities relative to Plaintiff's workers' compensation claim and referred Plaintiff to GB's discovery responses and document productions.[6] XL produced the non-privileged, responsive documents it had relating to this claim (the claims services agreement between XL and GB, the XL policy at issue, and the first notice of this matter to XL that occurred six days before the lawsuit was filed). Moreover, XL fully agreed to designate a witness for a 30(b)(6) deposition where the topics were relevant to Plaintiff's claim. (*See* Aff. of William C. Garry, ¶ 11, Attachment 8). XL agreed to designate a witness to testify about Plaintiff's workers' compensation claim, the respective roles played by XL and GB and the claims handling process with respect to Plaintiff's claim, the selection of, information provided to, and accuracy of report with respect to Dr. Nipper, XL's discovery responses, the history of Plaintiff's medical treatment, the mechanism of his injury, and the investigation of his injury. (*Id.*). Further, XL properly did not designate a witness with respect to irrelevant topics that exceeded the scope of Federal Rule of Civil Procedure 26(b)(1).

Also, even if the Disputed Discovery is relevant, which it is not, Plaintiff must show a need for such discovery. See *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) ("'Even if relevant, ***discovery is not permitted where no need is shown***, or

---

[6] Fed. R. Civ. P. 33(d) provides that a responding party may refer the interrogating party to specific records "[i]f the answer to an interrogatory may be determined by examining . . . abstracting, or summarizing a party's business records . . . and if the burden of deriving or ascertaining the answer will be substantially the same for either party . . ." GB is a party to this action and handled Plaintiff's workers' compensation claim. XL does not have a claim file for this claim predating litigation, nor does it have any other prelitigation documents in its possession related to the specific handling of Plaintiff's claim. Given Plaintiff submitted identical discovery requests to GB in this action seeking the exact same information, the "burden of deriving or ascertaining the answer" to Plaintiff's discovery by review of the documents produced by GB is "substantially the same for Plaintiff" as it would be for XL. Fed. R. Civ. P. 33(d).

11

compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.'" Citing *Miscellaneous Docket Matter # 1 v. Miscellaneous Docket Matter # 2,* 197 F.3d 922, 925 (8th Cir. 1999) (quoting *Micro Motion, Inc. v. Kane Steel Co.,* 894 F.2d 1318, 1323 (Fed. Cir. 1990))) (emphasis added). Plaintiff's Complaint, Discovery Letter, and Motion make clear that the production of the Disputed Discovery cannot achieve the stated purpose, rendering the discovery neither relevant nor needed. Fed. R. Civ. P. 26(b)(1).

Accordingly, the Disputed Discovery does not "reasonably bear upon the issues in the case" where XL was not the claim handling entity and has no pre-litigation knowledge of the claim. *Hofer,* 981 F.2d at 380. The Disputed Discovery is plainly outside of the scope of permissible discovery as none of the information sought has a tendency to make a fact of consequence in Plaintiff's claim against XL more or less probable. Fed. R. Civ. P 26(b). For these reasons, XL respectfully submits that the Motion to Compel should be denied.

### B.    Plaintiff's Discovery Requests Should be Limited to the Claim at Issue and Good Cause Exists to Limit the Discovery Requests

Rule 26(b)(2)(C)(iii) permits this Court, on motion or on its own, to limit discovery to the extent that it is outside the scope permitted by Rule 26(b)(1). As noted, the Disputed Discovery is not relevant so disclosure on its face is unsupported by Fed. R. Civ. P. 26(b)(1). Further, even if this Court were to find minimal relevance, the fact remains that Plaintiff does not have a need for the Disputed Discovery as it does not reasonably bear on the issues in the case. It certainly does not outweigh the injury that would result if XL were forced to produce confidential, proprietary trade secrets of completely unrelated insureds, unrelated claims, unrelated policies, or unrelated internal documents governing XL's claim handling process – none of which are at issue here.

Injury to XL includes the loss of time, money, and resources in reviewing and producing files that are irrelevant to the matter at hand. Moreover, the injury includes the disclosure of XL's trade secret, confidential information,[7] including XL's claim handling guidelines and procedure, manuals, salary, reserve information, incentives, and its protocols and processes of handling various unrelated claims. See *Hobbs v. Emps. Mut. Cas. Co.*, No. 5:17-CV-05040-JLV, 2018 WL 324867 (D.S.D. Jan. 8, 2018) (recognizing that "information concerning the insurance companies' claims handling polices, practices, and procedures, including personnel files, compensation information, and other sensitive information. . . implicated the insurance companies' confidential and proprietary business practices" and "trade secret[s]."). Though an Interim Protective Order has been entered in this case allowing the Parties to mark certain information Confidential, that certainly does not justify the production of **irrelevant** confidential and proprietary trade secrets, particularly where Plaintiff has shown no need for the discovery.

Plaintiff has shown no proper purpose for this fishing expedition against XL such that "the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery." *Murphy*, 255 F.R.D at 503 (citations omitted). Accordingly, XL requests that this Court deny the Motion to Compel and limit discovery from XL to the claim at issue.

---

[7] A trade secret is defined as information that derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use. *AvidAir Helicopter Supply, Inc. v. Rolls-Royce Corp.*, 663 F.3d 966, 972 (8th Cir. 2011).

**C.      Even if Plaintiff Prevails in his Motion to Compel, which he should not, Attorneys' Fees are not Warranted**

Finally, even if Plaintiff should prevail on his Motion to Compel, he is certainly not entitled to attorneys' fees particularly where he relies on case law that is neither analogous nor applicable. Plaintiff's Motion is also rife with hyperbole regarding the discovery dispute, ostensibly as an attempt to bolster his claim for attorneys' fees.  But as addressed *infra*, XL produced all non-privileged, relevant information in response to Plaintiff's Discovery Requests that it had in its position. XL also did not refuse to attend its deposition, as it was Plaintiff who decided not to proceed with the deposition to seek court intervention concerning this discovery dispute instead.

Pursuant to Fed. R. Civ. P. 37(b)(2)(C), attorneys' fees are not warranted where there is substantial justification or circumstances that "make an award of expenses unjust." Importantly, attorneys' fees are not warranted where reasonable minds can differ over whether the necessity of the sought information was substantially justified. *NDN Collective v. Retsel Corp.*, No. 5:22-CV-5027, 2024 WL 170581 (D.S.D. Jan. 16, 2024). Here, there is a legitimate dispute between the Parties over whether Plaintiff is entitled to the discovery it seeks against XL—a dispute where reasonable minds could differ over the relevance and necessity of this information. As such, attorneys' fees are not warranted in this circumstance even if Plaintiff were to prevail on his Motion to Compel.

## V.  CONCLUSION

Accordingly, XL respectfully requests that the Court deny Plaintiff's Motion to Compel and instead enter an order limiting the disclosure of documents, information, and testimony in response to the discovery requests,  as provided in the attachment to this Brief (entitled "Exhibit B") under Fed. R. Civ. P. 26.

14

Dated at Sioux Falls, South Dakota, this 11th day of June, 2024.

CADWELL SANFORD DEIBERT & GARRY LLP


By    /s/ William C. Garry
        William C. Garry
        200 East 10th St., Suite 200
        Sioux Falls SD 57104
        bgarry@cadlaw.com
        (605) 336-0828

        and

        Charles W. Browning
        Nicole C. Ruggirello
        PLUNKETT COONEY
        38505 Woodward Avenue, Suite 100
        Bloomfield Hills, Michigan 48304
        (248) 901-4000 Telephone
        (248) 901-4040 Facsimile
        cbrowning@plunkettcooney.com
        nruggirello@plunkettcooney.com

        ***Attorneys for Defendant XL Insurance America, Inc.***

15