UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL RICHTER,<br><br>                    Plaintiff,<br><br><br>          vs.<br><br><br>XL INSURANCE AMERICA INC., and GALLAGHER BASSETT SERVICES, INC.,<br><br>                    Defendants. | 4:23-CV-04094-CCT<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL<br><br><br>Docket No. 37 |

**INTRODUCTION**

This matter is before the court on plaintiff Michael Richter's complaint alleging defendants refused in bad faith to pay workers compensation insurance benefits to him.  Docket No. 1.  Jurisdiction is premised on the diversity of citizenship of the parties.  28 U.S.C. § 1332.  The district court has now referred a motion to compel discovery filed by plaintiff.  Docket No. 37. Defendants resist the motion.  Docket No. 44.

**FACTS**

The basic facts, drawn from plaintiff's complaint, are given to provide context for the motion.  No imprimatur of approval or veracity by the court is intended by the recitation of plaintiff's allegations.

Plaintiff was injured while at work when the van he was driving was rearended by a semitruck on September 6, 2017.  Plaintiff's employer had purchased workers compensation insurance through defendant XL Insurance America Inc. ("XL").  XL in turn hired defendant Gallagher Bassett Services, Inc. ("Gallagher") to perform claim administration services.

Following plaintiff's accident, defendants initially accepted plaintiff's workers compensation claim and paid him benefits, including medical care expenses.  Plaintiff returned to work in October 2017, but alleges he continues to experience neck and upper back pain and headaches.  Plaintiff initially was treated with medication, massage, physical therapy, and chiropractic treatment.  In January and March 2020 he was treated with trigger point injections.

In September 2020 plaintiff was referred for a neurosurgery evaluation for his continuing pain.  Two days later, plaintiff underwent an independent medical examination ("IME") with Dr. Jeffery Nipper, defendants' chosen physician.  Plaintiff alleges Dr. Nipper had a close relationship with insurance companies and defendants knew or should have known Dr. Nipper would give a favorable opinion for the defendants.

Dr. Nipper issued a report a few days later opining that plaintiff's injuries had fully resolved and he was misrepresenting or embellishing his injuries. Because plaintiff's accident injuries had resolved, Dr. Nipper opined that any further symptoms he continued to experience were unrelated to the workplace injury and defendants had no obligation to pay for further treatment.

2

Defendants accordingly notified plaintiff on October 5, 2020, that they were denying his workers compensation claim and would provide no further benefits.

Plaintiff initiated a proceeding before the South Dakota Department of Labor seeking reinstatement of his workers compensation benefits. Dr. Nipper's deposition was taken on January 6, 2023.  During that deposition, Dr. Nipper changed his opinion about plaintiff's injuries after seeing photos of the accident scene.  He stated the photos were "powerful evidence that a higher energy injury occurred than what was represented" and that the collision which occurred during the scope of plaintiff's employment was a "major contributing cause" of plaintiff's neck condition and the treatment he received. Dr. Nipper further opined that the treatment plaintiff received was reasonable and necessary.  Defendants agreed.

The ALJ issued a January 27, 2023, order that plaintiff's September 6, 2017, injury was and is a major contributing cause of his current condition and need for medical treatment and that plaintiff's employer and defendants must pay any outstanding benefits and future benefits.

Plaintiff now brings this action for bad faith refusal to pay workers compensation benefits for the period of time between October 5, 2020, and January 6, 2023.  He asserts that defendants' actions delayed his medical treatment, causing him unnecessary pain; caused him serious financial hardship; delayed payment of his medical bills; and caused him emotional upset, aggravation, annoyance, and embarrassment.

# DISCUSSION

## A.     Meet and Confer Requirement

Before a party may file a discovery motion seeking to compel (or seeking

protection from) discovery, the party is required to meet and confer with the

party from whom the discovery is requested in a good faith effort to resolve the

discovery dispute.  Fed. R. Civ. P. 37(a)(1); DSD LR 37.1.  In this motion to

compel, defendants do not dispute that plaintiff met the requirement for good

faith conferral.  See Docket No. 44.

## B.     Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery

in civil cases pending in federal court:

> *Scope in General.*  Unless otherwise limited by court order, the
> scope of discovery is as follows: Parties may obtain discovery
> regarding any nonprivileged matter that is relevant to any party's
> claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the
> amount in controversy, the parties' relative access to relevant
> information, the parties' resources, the importance of the discovery
> in resolving the issues, and whether the burden or expense of the
> proposed discovery outweighs its likely benefit.  Information within
> this scope of discovery need not be admissible in evidence to be
> discoverable.

See Fed. R. Civ. P. 26(b)(1).

"An interrogatory may relate to any matter that may be inquired into

under Rule 26(b)." Fed. R. Civ. P. 33(a)(2).  Interrogatories must be answered

unless the opposing party objects stating specific grounds for the objection.  Cf.

id. at (b)(4).  Interrogatories must be proportional to the needs of the case, as

must all discovery requests under Rule 26(b)(1).  FED. R. CIV. P. 33 advisory committee's note to 2015 Amendment.

A party requesting the production of documents "must describe with reasonable particularity each item or category of items to be inspected."  FED. R. CIV. P. 34(b)(1)(A).  The responding party must allow inspection, produce copies, or object and provide a basis for that objection.  Id. at (b)(2)(B)-(C).  "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request."  Id. at (b)(2)(E)(i).  "The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response."  Id. at (b)(2)(B).

The scope of discovery under Rule 26(b) is extremely broad.  See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller").  The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  To that end, either party may compel the other to disgorge whatever facts he has in his possession."  8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)).  The Federal Rules distinguish between discoverability and admissibility of evidence.  FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c).  Therefore, the rules of evidence assume the task of keeping out

incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

When a party fails to answer an interrogatory or produce materials responsive to a request for production, the party seeking discovery may move the court "for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1), (a)(3)(B)(iii)–(iv). The moving party "must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)." Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263-64 (D.S.D. 2016) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). It then becomes the burden of the party resisting discovery to convince the court that "the discovery is irrelevant or disproportional." Id. (citations omitted). If the court determines the requests to be outside the scope allowed by Rule 26(b)(1), it must fashion appropriate limits. FED. R. CIV. P. 26(b)(2)(C)(iii).

## C.    Rule 30(b)(6) Deposition Notice

### 1.    Rule 30(b)(6)

Federal Rule of Civil Procedure 30(b)(6) governs depositions of organizational entities and provides as follows:

> **(6) Notice or Subpoena Directed to an Organization.** In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will

testify.  Before or promptly after the notice of subpoena is served, the serving party and the organization must confer in good faith about the matters for examination.  A subpoena must advise a nonparty organization of its duty to confer with the serving party and to designate each person who will testify.  The persons designated must testify about information known or reasonably available to the organization.  This paragraph (6) does not preclude a deposition by any other procedure allowed by these rules.

See Fed. R. Civ. P. 30(b)(6).

In 1970, Congress substantively amended Rule 30(b)(6) to place the burden on the organizational entity to designate the appropriate representative(s) to testify on its behalf.  See Fed. R. Civ. P. 30(b)(6) advisory committee's note.  This amendment serves three useful purposes.  See id.

First, it reduces the difficulties experienced by the party requesting the deposition in determining whether a particular organizational employee was a "managing agent."  Id.  Second, it curbs the "bandying" by which various organizational officers or agents, while being deposed, disclaim knowledge of facts clearly known by some other officer or agent of the organization.  Id.; see also Prokosch v. Catalina Lighting, Inc., 193 F.R.D. 633, 638 (D. Minn. 2000) ("Since a corporation can only act through its employees, directors and agents, the potential thrives for an inquiring party to be bandied, from one corporate representative to another, vainly searching for a deponent who is able to provide a response which would be binding upon that corporation.").

Finally, it protects the organization by eliminating unnecessary and unproductive depositions of employees who have no knowledge of the topics at issue.  See Fed. R. Civ. P. 30(b)(6) advisory committee's note; see also

7

Prokosch, 193 F.R.D. at 638 ("On the other hand, a corporation should not be confronted with a seemingly endless sequence of depositions which necessarily interfere with the capacity of its officers and employees to properly discharge their employment duties, and which impose substantial financial costs.") (additional citations omitted); Protective Nat. Ins. Co. of America v. Commonwealth Ins. Co., 137 F.R.D. 267, 278 (D.Neb. 1989) (explaining the rationale behind the 1970 amendment) (citing Cates v. LTV Aerospace Corp., 480 F.2d 620, 623 (5th Cir. 1973)).

"[T]he effectiveness of the Rule bears heavily upon the parties' reciprocal obligations." Prokosch, 193 F.R.D. at 638. The party requesting the deposition must "reasonably particularize the subjects of the intended inquiry so as to facilitate the responding party's selection of the most suitable deponent." Id.; see also Dwelly v. Yamaha Motor Corp., 214 F.R.D. 537, 540 (D. Minn. 2003) ("[T]he Rule only operates effectively when the requesting party specifically designates the topics for deposition, and when the producing party produces such number of persons as will satisfy the request.") (additional quotation marks and citations omitted).

Armed with this notice, the responding party "must make a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by [the interrogator] and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed by [the interrogator] as to the relevant subject matters." Prokosch, 193 F.R.D.

8

at 638 (additional quotation marks and citations omitted); see also Alliance for Global Justice v. District of Columbia, 437 F.Supp.2d 32, 37 (D.D.C. 2006) ("By its very nature, a Rule 30(b)(6) deposition notice requires the responding party to prepare a designated representative so that he or she can testify on matters not only within his or her personal knowledge, but also on matters reasonably known by the responding entity.") (citation omitted).  "If no current employee has sufficient knowledge to provide the requested information, the party is obligated prepare [one or more witnesses] so that they may give complete, knowledgeable and binding answers on behalf of the corporation." Dravo Corp. v. Liberty Mut. Ins. Co., 164 F.R.D. 70, 75 (D.Neb. 1995).

### 2.   Provisions of Plaintiff's Deposition Notice Objected to

Here, plaintiff's Rule 30(b)(6) deposition notice set forth 31 separate topics on which he required XL to designate a person to testify.  See Docket No. 39-8.  XL objected to the following 20 of those 31 topics:

> 1.     Protocols, guidelines, policies and procedures from the last ten years that assist Insurer's employees and/or adjusters in handling and/or adjusting workers compensation claims in South Dakota, including the process for determining whether an injury is covered.

> 2.     Protocols, guidelines, policies and procedures for processing investigating and valuing workers compensation claims from the last ten years.

> 4.     The duties and obligations of good faith and fair dealing under South Dakota law when adjusting workers compensation claims during the past ten years.

> 5.     The duties and responsibilities of Insurer as it relates to the South Dakota Unfair Claims Practices Act.

6.     Actions or activities that would constitute bad faith under South Dakota law when adjusting workers compensation claims during the past ten years.

7.     Insurer's protocols, guidelines, procedures or policies for investigating workers compensation claims decisions which have been appealed or challenged by an injured worker for the past ten years.

8.     Insurer's protocols, procedures for resolving or reconciling the opinions of treating doctors that are inconsistent with the opinions of doctors retained to perform Independent Medical Examinations (IME) or Record Reviews during the past ten years.

9.     The role generally played by representative of the Insurer when determining whether a workers compensation claim is covered during the past ten years.

10.     The role generally played by Insurer when determining whether a workers compensation claim is covered during the past ten years.

11.     The roles played by Insurer, XL Insurance Third Party Administrator-Gallagher, and any person or entity that Insurer alleges was involved in the decision to deny plaintiff's benefits.

12.     The responsibilities Insurer holds to evaluate and review the work of its Third Party Administrators and agents.

17.     Time Insurer allotted to process a workers compensation claim during the past ten years.

18.     Insurer's protocols, policies, procedures and processes for requesting an IME during the past ten years.

19.     Protocols, policies, procedures and processes for selecting a specific doctor to perform an IME during the past ten years.

20.     Vetting process for doctors used to perform an IME or Records Review for the past ten years.

23.     The importance of an IME when determining whether an event was a major contributing cause to an injury during the past ten years.

24.    Protocols, guidelines policies and procedures following receipt of an IME report and process for verifying accuracy of the report for the past ten years.

29.    The facts surrounding any regulatory actions that have been filed against Insurer, including but not limited to suspension or revocation proceedings, Market Conduct Examinations, Cease and Desist Orders, Consent Orders, Reports of Examinations, Corrective Orders or Corrective Action Plans, involving the Insurer's handling of workers compensation claims within the past ten years.

30.    The facts surrounding any department of Insurance consumer complaints involving Insurer's handling of workers compensation claims from the last ten years.

31.    The facts surrounding any civil lawsuit alleging insurance bad faith or unfair claims processing filed against Insurer in the past ten years involving a workers compensation claim.

See Docket No. 39-8.

### 3.    Defendant XL's Objections

### a.    It Was Gallagher, Not XL

There are two defendants in this case.  XL issued the policy of workers compensation insurance to plaintiff's employer and collected premiums for that policy.  Gallagher was an agent hired by XL to provide claims administration services for plaintiff's claim.  The notice of deposition and written discovery requests at issue in plaintiff's current motion to compel were directed to XL, not to Gallagher.

As to every one of the above topics in plaintiff's deposition notice *except* topic numbers 11 and 12, XL objected to the topic on the ground that it was Gallagher, not XL, which handled plaintiff's claim so the topics are not relevant

to XL.  See Docket No. 39-9.  On the basis of this objection, as well as the others discussed below, XL notified plaintiff it refused to produce a witness to testify about these topics except that XL did designate a witness to testify as to topic number 11.  Id.  Rather than go forward with a deposition at which two-thirds of the topics would not be addressed, plaintiff canceled the deposition, tried unsuccessfully to resolve the matter informally with XL, and then filed the instant motion to compel.

XL argues that it was not involved in any of the claims handling decisions with regard to plaintiff's claim and, therefore, none of plaintiff's discovery requests to XL having to do with claims handling are relevant.  In essence, XL asserts it had no role in the decision to deny plaintiff benefits following the issuance of Dr. Nipper's opinion and, therefore, it does not have to respond to plaintiff's discovery requests along those lines.

XL's argument boils down to an assertion that it bears no legal liability for plaintiff's bad faith claim.  But such an assertion is misplaced in a discovery dispute.  If XL believes it is not liable, it could have filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in lieu of an answer.  Having filed an answer, XL may still assert its claim of nonliability in the form of a motion for summary judgment under Fed. R. Civ. P. 56.  See Nye v. Hartford, Civ. No. 12-5028-JLV, 2013 WL 3107492 at *6 (D.S.D. June 18, 2013) (rejecting claims of nonliability by insurer/defendant as a shield against discovery).  But as long as XL remains a party to this lawsuit, XL has a duty to respond in good faith to plaintiff's discovery requests.  Id.

12

To prove a bad faith cause of action, plaintiff must show that defendants had no reasonable basis for denying his claim for insurance benefits and that defendants acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits.  See Sawyer v. Farm Bureau Mut. Ins. Co., 2000 S.D. 144, ¶ 18, 619 N.W.2d 644, 649.  In his complaint, plaintiff has pleaded an assertion that Gallagher was acting as XL's agent and that XL was the principal.  Docket No. 1 at p. 2, ¶ 9.  Plaintiff asserts that Gallagher performed claim administration services on plaintiff's claim, and that both Gallagher and XL had a duty of good faith and fair dealing toward plaintiff.  Id. at pp. 2-3, ¶¶ 8-12.

Generally, a principal is liable for the acts of an agent committed within the scope of the agency.  Hass v. Wentzlaff, 816 N.W.2d 96, 103 (S.D. 2012).  Furthermore, an insurer has a duty to deal with its insured in good faith, even when the insurer entrusts the adjusting of the insured's claim to a third party, and such an insurer may be held liable for unreasonable failure to pay insurance benefits.  Eldridge v. Northwest G.F. Mut. Ins. Co., 221 N.W.2d 16, 21-22 (S.D. 1974).  Even where the defendant's assignment of adjusting duties to the agent is made in good faith, "ultimately the liability for the adjusting firm's failure to make an adequate investigation of plaintiff's claim . . . must rest upon [the insurer]."  Id. at 21.

The topics listed in plaintiff's deposition notice are relevant as they are aimed precisely at exploring what the nature of the agency relationship was between XL and Gallagher, whether Gallagher's acts were committed within the

13

scope of that agency, and whether XL or Gallagher or both of them denied plaintiff's workers compensation claim with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of that claim. Any private litigation or regulatory action brought for wrongful denial of workers compensation insurance benefits was likely—as in this case—to be brought against XL as the principal, in addition to any agent to which XL outsourced part or all of its claims handling. Therefore inquiry about past civil lawsuits and regulatory actions may appropriately be made of XL.

There is no reason XL cannot provide a witness to testify about each of the 19 topics to which this relevancy objection is lodged. For example, does XL maintain any control over the claims handling process it has outsourced to Gallagher? Does XL track claims and follow up with Gallagher if something seems amiss? Does XL provide guidance to Gallagher about how XL wishes Gallagher to handle claims generally? Does XL provide guidance to Gallagher specific to South Dakota about how to handle workers compensation claims? What is the financial arrangement between XL and Gallagher? Are there any facets of this financial arrangement that incentivize Gallagher to deny or reduce claims? These are all fair topics of inquiry.

XL claims it never even knew plaintiff had filed a workers compensation claim until June 1, 2023, six days prior to the filing of the complaint with this court. Docket No. 44 at p. 1. XL claims that all pleadings filed before the South Dakota Department of Labor on plaintiff's petition in that venue were filed by Gallagher on XL's behalf. If XL is really devoid of any knowledge,

14

input, or control over the claims handling process it entrusted to Gallagher, that in itself is a telling and relevant fact.  XL can simply provide a witness to testify that that is the case.  XL's relevancy objection is overruled.

### b.    Privilege

To each of the 20 topics XL objected to, it asserted the objection that providing a witness to testify about the topic might call for attorney-client privilege, attorney work product material, common interest or joint defense privilege, or any other privilege, doctrine or protection that may apply.  See Docket No. 39-9.

Rule 26 of the Federal Rules of Civil Procedure provides that:

When a party withholds information otherwise discoverable by claiming that the information is privileged or subject to protection as trial-preparation material, the party must:
(i) expressly make the claim; and

(ii) describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim.

See Fed. R. Civ. P. 26(b)(5).

Aside from the mere articulation of privilege in its written objections to plaintiff's deposition notice, XL never mentions the topic of privilege in its brief in opposition to plaintiff's motion to compel.  See Docket No. 44.

XL has not satisfied its duty to support its claim of privilege as outlined by Rule 26(b)(5).  Moreover, the deposition notice calls for oral testimony.  If, at the deposition of XL's designated witness(es), plaintiff's counsel asks a question that calls for disclosure of privileged information, XL's counsel may insert an

objection at that point and instruct the witness not to answer the question.
Any potential for disclosure of privileged information is amply protected by this
procedure.  The court overrules XL's privilege objection.

### c.     Confidential, Proprietary and/or Trade Secret

In each of the 20 topics to which XL objected to in plaintiff's deposition
notice, XL asserts that the topic calls for the disclosure of confidential,
proprietary or trade secret information.  <u>See</u> Docket No. 39-9.  But the district
court in this matter has already entered a protective order allowing parties to
designate information as "attorney's eyes only" or "confidential."  <u>See</u> Docket
No. 22.

The protective order covers, among other things, trade secrets and
competitively or commercially sensitive proprietary information.  <u>Id.</u> at p. 3.
Should plaintiff's counsel ask a question at XL's Rule 30(b)(6) deposition that
calls for confidential, proprietary, or trade secret information, the existing
protective order provides the necessary protection for XL.  <u>See</u> <u>id.</u> at p. 4
(noting the procedure to be followed if confidential or attorney's eyes only
information is inquired into at an oral deposition).  The court overrules this
objection by XL.

### d.     Legal Information/Legal Analysis of South Dakota Law

In response to topics 4, 5, 6, 9, 10, 11, and 12, XL objected on the
grounds that these topics seek legal information and legal analysis of South
Dakota law and, as such, these topics are inappropriate for a Rule 30(b)(6)
deposition.  <u>See</u> Docket No. 39-9.  XL never mentions, discusses, or supports

this objection in its brief in opposition to plaintiff's motion to compel.  Docket No. 44.  The court finds that XL has abandoned this objection and is no longer relying on it as a basis for refusing to designate a witness as to these seven topics.  The objection is overruled.

**D.  Interrogatory No. 6 and Request for the Production of Documents No. 14**

Plaintiff's interrogatory number 6 and request for the production of documents (RFP) number 14 ask XL to identify, for the last 10 years, every claim in which XL or an entity/third party/agent of XL hired Dr. Jeffrey Nipper to conduct an IME of an XL insured and to produce Dr. Nipper's file in that matter.  <u>See</u> Docket No. 39-1 at pp. 6 and 25.  The RFP is limited to the states of South Dakota, North Dakota, Minnesota, Nebraska, Iowa, Arkansas, and Missouri.  <u>Id.</u> at p. 25.

XL objected to the interrogatory in its written response on the basis it was irrelevant, not proportional, it seeks privileged information, and it seeks confidential and proprietary business information.  <u>Id.</u> at p. 6.  XL objected to the RFP in its written response on the same grounds.  <u>Id.</u> at p. 25.  The relevancy, privilege, and confidentiality objections are overruled for the reasons stated above.

XL argues that both requests are overly broad, unduly burdensome and not proportional to the needs of the case.  <u>Id.</u> at pp. 6 and 25.  XL appears to have abandoned these objections to interrogatory no. 6 and RFP no. 14 as it never addresses them in its brief in opposition to plaintiff's motion to compel. Instead, XL simply argues again that XL did not investigate plaintiffs claim and

17

so the request is irrelevant (see Docket No. 44 at pp. 9-10), which objection the court has already overruled.

Even if the undue burden objection is still extant, it is incumbent on the party resisting discovery to show specific facts demonstrating how the requested discovery is overly broad, burdensome, or oppressive. Penford Corp. v. National Union Fire Ins. Co., 265 F.R.D. 430, 433 (N.D. Iowa 2009); St. Paul Reinsurance Co. v. Commercial Financial Corp., 198 F.R.D. 508, 511 (N.D. Iowa 2000). The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden--that party must make a specific showing of reasons *why* the relevant discovery should not be had. Cincinnati Ins. Co. v. Fine Home Managers, Inc., 2010 WL 2990118, *1 (E.D. Mo. 2010); Burns v. Imagine Films Entertainment, Inc., 164 F.R.D. 589, 593 (W.D.N.Y. 1996).

Additionally, a party is required to produce responsive documents within that party's possession, custody or control. See Fed. R. Civ. P. 34(a)(1). If a party "has the legal right to obtain the document," then the document is within that party's "control" and, thus, subject to production under Rule 34. See 8A Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, Fed. Practice & Procedure, §2210, at 397 (2d ed. 1994). Here, XL has the legal right to obtain the documents requested by RFP no. 14 from either Gallagher or Dr. Nipper himself. Thus, they are within XL's "control" and XL must produce the documents.

To the extent XL has not abandoned its argument that the burden of producing the discovery is disproportionate to the needs of the case, the court overrules that objection on the merits.  XL has not demonstrated specific facts showing how or why the burden of producing a list of cases in which XL or its agent hired Dr. Nipper and then producing those (redacted)[1] files is disproportionate.  The court orders XL to produce this information.

**E.     Interrogatory No. 20**

This discovery request asks XL to identify, for the last five years, every case in which it has been a party to a civil lawsuit alleging bad faith or unfair claims processing or in which XL has been a party in a regulatory complaint, involving a workers compensation claim.  Docket No. 39-1 at p. 14.  In its written discovery response XL objected to the request on grounds that it was overly broad, unduly burdensome, and not proportional to the needs of the case; that it seeks privileged information; and that it calls for confidential and proprietary business information of XL.  Id. at pp. 14-15.

XL has abandoned all of these arguments because they are not reiterated in its brief in opposition to plaintiff's motion to compel.  See Docket No. 44.  Instead, XL insists it need not provide the requested information because it did not handle plaintiff's claim.  Id. at pp. 10-11.  For the reasons previously discussed, this objection is overruled.  XL cannot collect premiums in return

---

[1] RFP 14 specifically allows XL to redact the name and any identifying information related to the person who was the subject of the IME.  Docket No. 39-1 at p. 25.

for a promise to provide insurance coverage, outsource the handling of claims to an agent, and then declare it has no liability if the agent denies claims in bad faith.  Eldridge, 221 N.W.2d at 21.  Also, as already discussed, it is likely that XL—as the principal--was named as a party in any civil lawsuit or regulatory matter described by these discovery requests even if a third party administered the claim, so it is entirely proper for plaintiff to inquire into them.

## F.   RFP Nos. 12, 15, 16 & 17

These RFPs generally request written documents for the last 10 years that XL has created giving guidance or establishing policies and procedures for handling claims, informing employees of how they can obtain increased remuneration, reducing claims payments, and decreasing loss ratios or severity costs.  See Docket No. 39-1 at pp. 24-26.  XL asserted the same objections to the written discovery requests discussed above, and then—except for the confidentiality objection--failed to support or even talk about these objections in its brief in opposition.  See Docket No. 44.  The court deems those objections to be abandoned.

Instead, XL argues in its brief the same refrain:  XL did not participate in the handling of plaintiff's claim so none of the requested documents are relevant.  Id. at p. 9.  Again, the court rejects this argument.

The exact nature of the relationship between XL and Gallagher is not yet known.  It is not known, for example, whether XL employees receive pay incentives for inducing Gallagher to reduce payouts on workers compensation claims.  It is unknown whether XL provided Gallagher with written policies and

20

procedures for handling workers compensation claims entrusted to Gallagher. It is unknown whether XL had policies and procedures in place ensuring it could turn a blind eye to any of Gallagher's potential abuses of the claims handling process.  Plaintiff is allowed to explore these subjects.

XL argues that its claims handling documents, reserve information, performance incentives, and salary information are confidential and irrelevant. XL asserts it should not have to produce sensitive documents that have no bearing on plaintiff's claim (because XL did not handle plaintiff's claim).  The court has already determined that the information is relevant and adequately protected by the existing protective order.  XL is ordered to produce the requested discovery.

**G.    RFP Nos. 18 and 19**

RFP nos. 18 and 19 seek documents related to regulatory actions and consumer complaints made to any Department of Insurance regarding XL's handling of workers compensation claims for the last ten years.  Docket No. 39-1 at pp. 26-27.  XL interposed written objections the same as discussed above (disproportionate, irrelevant, privileged, and confidential).  Id.

None of XL's written objections are discussed in its brief in opposition to plaintiff's motion to compel except the assertion that the discovery is not relevant because XL did not handle plaintiff's claim.  Docket No. 44 at p. 10. Again, the court rejects this argument.

Given the nature of agency law and the fact that XL is the insurer, it is likely that any regulatory actions or consumer complaints involving

mishandling of claims submitted on XL workers compensation policies would name XL as a party in the action or complaint, even if XL had outsourced claims handling to Gallagher or some other third party. This in turn could show that XL knew or recklessly disregarded bad faith claims handling by its chosen agent. Just because XL did not participate in the handling of a claim does not mean that the regulatory action or complaint has no bearing on plaintiff's claims herein.

**H.     RFP Nos. 21 & 22**

RFP nos. 21 and 22 seek pleadings, XL affidavits, and XL depositions for the last five years from any lawsuit filed against XL for bad faith, breach of contract, fraud, deceit, or unfair claims processing involving a workers compensation claim and which was pending in any court in South Dakota, North Dakota, Nebraska, Missoui, Minnesota, Iowa, or Arkansas. Docket No. 39-1 at pp. 28-29. XL interposed the same written objections discussed above (disproportionate, irrelevant, privileged, and confidential). Id.

None of XL's written objections are discussed in its brief in opposition to plaintiff's motion to compel except the assertion that the discovery is not relevant because XL did not handle plaintiff's claim. Docket No. 44 at p. 10. Again, the court rejects this argument. XL was the insurer, regardless of whether it outsourced claims handling to another party. If XL has been sued numerous times for Gallagher's (or another agent's) bad faith handling of claims, that is relevant to whether XL knew or recklessly disregarded

Gallagher's handling of plaintiff's claim in this case.  Pleadings, XL employee depositions and affidavits from those lawsuits are equally relevant.

## I.      RFP No. 23

RFP no. 23 asks "if a third-party entity assisted with the evaluation of plaintiff's claim, provide all documents that show the number of other matters in which the same entity was retained by you to evaluate other insureds' workers compensation claims over the past five years and whether the claim was denied or paid."  Docket No. 39-1 at p. 29.  This RFP apparently does not refer to Gallagher as the "third party" as plaintiff writes in his brief that "XL has refused to provide information regarding the parties that were hired to evaluate [p]laintiff's workers compensation claim.  Accordingly, [p]laintiff is unable to name the specific entities."  Docket No. 38 at p. 19.

XL interposed the same written objections discussed above (disproportionate, irrelevant, privileged, and confidential).  Docket No. 39-1 at pp. 29-30.  In its brief in opposition to plaintiff's motion to compel, XL asserts only the argument that the information sought is irrelevant because XL did not handle plaintiff's claim.  Docket No. 44 at p. 10.  This objection is overruled for the reasons already repeatedly discussed.

If third parties other than Gallagher assisted with the evaluation of plaintiff's claim, plaintiff has a right to know that.  Similarly, if Gallagher (and Dr. Nipper) were the only third parties involved in the evaluation of plaintiff's claim, XL has a duty to inform plaintiff of that fact.  Documents in which the same third party was involved in handling a claim as in plaintiff's case are

23

relevant as it may shed light on whether that third party acted in bad faith in evaluating workers compensation claims and, in turn, whether XL knew or acted with reckless disregard toward that third party's conduct.

## J.   Sanctions

Plaintiff seeks his attorney's fees in preparing the instant motion as sanctions for XL's refusal to designate a witness for each of the Rule 30(b)(6) topics and for failing to provide responsive discovery to the various interrogatories and RFPs discussed above.  XL argues plaintiff should not be entitled to attorney's fees.  In particular, XL points out that it did not simply refuse to appear for its Rule 30(b)(6) deposition.  Rather, plaintiff canceled the deposition in favor of filing the instant motion to compel.

Plaintiff served its Rule 30(b)(6) deposition notice on April 26, 2024, which notified XL that the impending deposition would take place on June 4, 2024, in Exton, Pennsylvania.  Docket No. 39-8.  XL served its objections to that deposition notice on May 8, 2024.  Docket No. 39-9.  The parties met and conferred the very next day, May 9.  Plaintiff then proactively canceled the Rule 30(b)(6) deposition.  Docket No. 39-12 at p. 1.

When a successful motion is made under Fed. R. Civ. P. 37, the court "must" require the party whose actions required the filing of the motion to pay the moving party's reasonable expenses incurred in making the motion unless (1) there was no good faith effort before hand to resolve the matter; (2) the opposing party's nondisclosure, response, or objection was substantially

24

justified; or (3) other circumstances make an award of expenses unjust.   Fed. R. Civ. P. 37(a)(5)(A).

Here, neither XL's refusal to designate a witness(es) to respond to all of the Rule 30(b)(6) topics nor XL's objections to the written discovery requests were substantially justified.  The court is aware of no other circumstances that would make an award of attorney's fees unjust.  Accordingly, the court will award plaintiff his attorney's fees in making the instant motion.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is hereby

ORDERED that Plaintiff's motion to compel [Docket No 37] is granted in its entirety.  Defendant XL is ordered to cooperate with plaintiff to reschedule the planned Rule 30(b)(6) deposition and to designate a witness(es) to testify to each of the 31 topics.  It is also

ORDERED that XL must provide discovery responses and documents in connection with the written discovery requests at issue in this opinion within 21 days from the date of this order.  It is further

ORDERED that plaintiff's request for attorney's fees is granted.  Plaintiff may file a request for attorney's fees in connection with making this motion within 21 days of today's date.  Thereafter XL will have an opportunity to respond to that request within 21 days.  Plaintiff may, if desired, file a reply within 14 days of XL's response.

**NOTICE OF RIGHT TO APPEAL**

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained.  See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A).   Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Id.  Objections must be timely and specific in order to require review by the district court.  Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 16th day of July, 2024.

BY THE COURT:

_____
VERONICA L. DUFFY
United States Magistrate Judge