UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MICHAEL RICHTER,<br><br>               Plaintiff,<br><br>vs.<br><br>XL INSURANCE AMERICA INC., and GALLAGHER BASSETT SERVICES, INC.,<br><br>               Defendants,<br><br>ExamWorks, LLC,<br><br>               Interested Party. | 4:23-CV-04094-CCT<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO QUASH BY INTERESTED PARTY EXAMWORKS, LLC<br><br>Docket No. 43 |

**INTRODUCTION**

    This matter is before the court on plaintiff Michael Richter's complaint alleging defendants refused in bad faith to pay workers compensation insurance benefits to him. Docket No. 1. Jurisdiction is premised on the diversity of citizenship of the parties. 28 U.S.C. § 1332. Defendant Gallagher Bassett Services, Inc. ("Gallagher") served third party ExamWorks, LLC with a subpoena *duces tecum*. ExamWorks now moves to quash that subpoena and for a protective order. Docket No. 43. The district court referred that motion to

this magistrate judge. Docket No. 48. Gallagher resists the motion. Docket No. 51.

**FACTS**

The basic facts, drawn from plaintiff's complaint, are given to provide context for the motion. No imprimatur of approval or veracity by the court is intended by the recitation of plaintiff's allegations.

Plaintiff was injured while at work when the van he was driving was rearended by a semitruck on September 6, 2017. Plaintiff's employer had purchased workers compensation insurance through defendant XL Insurance America Inc. ("XL"). XL in turn hired defendant Gallagher Bassett Services, Inc. ("Gallagher") to perform claim administration services.

Following plaintiff's accident, defendants initially accepted plaintiff's workers compensation claim and paid him benefits, including medical care expenses. Plaintiff returned to work in October 2017, but alleges he continues to experience neck and upper back pain and headaches. Plaintiff initially was treated with medication, massage, physical therapy, and chiropractic treatment. In January and March 2020 he was treated with trigger point injections.

In September 2020 plaintiff was referred for a neurosurgery evaluation for his continuing pain. Two days later, plaintiff underwent an independent medical examination ("IME") with Dr. Jeffery Nipper, who was retained by defendants through ExamWorks. Plaintiff alleges Dr. Nipper had a close relationship with insurance companies and defendants knew or should have

known Dr. Nipper would give a favorable opinion for the defendants. Dr. Nipper was selected through vendor and interested party ExamWorks.

Dr. Nipper issued a report a few days later opining that plaintiff's injuries had fully resolved and he was misrepresenting or embellishing his injuries. Because plaintiff's accident injuries had resolved, Dr. Nipper opined that any further symptoms he continued to experience were unrelated to the workplace injury and defendants had no obligation to pay for further treatment. Defendants accordingly notified plaintiff on October 5, 2020, that they were denying his workers compensation claim and would provide no further benefits.

Plaintiff initiated a proceeding before the South Dakota Department of Labor seeking reinstatement of his workers compensation benefits. Dr. Nipper's deposition was taken on January 6, 2023.  During that deposition, Dr. Nipper changed his opinion about plaintiff's injuries after seeing photos of the accident scene.  He stated the photos were "powerful evidence that a higher energy injury occurred than what was represented" and that the collision which occurred during the scope of plaintiff's employment was a "major contributing cause" of plaintiff's neck condition and the treatment he received. Dr. Nipper further opined that the treatment plaintiff received was reasonable and necessary.  Defendants agreed.

The ALJ issued a January 27, 2023, order that plaintiff's September 6, 2017, injury was and is a major contributing cause of his current condition

and need for medical treatment and that plaintiff's employer and defendants must pay any outstanding benefits and future benefits.

Plaintiff now brings this action for bad faith refusal to pay workers compensation benefits for the period of time between October 5, 2020, and January 6, 2023.  He asserts that defendants' actions delayed his medical treatment, causing him unnecessary pain; caused him serious financial hardship; delayed payment of his medical bills; and caused him emotional upset, aggravation, annoyance, and embarrassment.

Plaintiff served Gallagher with discovery requests seeking to identify all workers compensation claims on which Gallagher had hired Dr. Nipper to conduct an IME or records review of its insured and copies of all reports written by Dr. Nipper in connection with those hirings.  Docket No. 25-2 at pp. 14, 27.  Gallagher responded that it was unable to identify and produce such documents because it did not maintain a database linked to the names of IME providers.  Id.

Gallagher then served ExamWorks with a subpoena *duces tecum* seeking the documents plaintiff requested in connection with Dr. Nipper.  See Docket No. 43-1.  ExamWorks refused to produce any information or documents pursuant to the subpoena and brought the instant motion to quash.  Docket No. 43.

4

## DISCUSSION

### A.   Meet and Confer Requirement

Before a party may file a discovery motion seeking to compel (or seeking protection from) discovery, the party is required to meet and confer with the party from whom the discovery is requested in a good faith effort to resolve the discovery dispute. Fed. R. Civ. P. 26(c)(1) and 37(a)(1); DSD LR 37.1. In this motion to quash and for protection, Gallagher does not dispute that ExamWorks met the requirement for good faith conferral. See Docket No. 51.

### B.   Scope of Discovery

Federal Rule of Civil Procedure 26(b)(1) sets forth the scope of discovery in civil cases pending in federal court:

> *Scope in General.* Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

See FED. R. CIV. P. 26(b)(1).

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." FED. R. CIV. P. 33(a)(2). Interrogatories must be answered unless the opposing party objects stating specific grounds for the objection. Cf. id. at (b)(4). Interrogatories must be proportional to the needs of the case, as

5

must all discovery requests under Rule 26(b)(1). FED. R. CIV. P. 33 advisory committee's note to 2015 Amendment.

A party requesting the production of documents "must describe with reasonable particularity each item or category of items to be inspected." FED. R. CIV. P. 34(b)(1)(A). The responding party must allow inspection, produce copies, or object and provide a basis for that objection. Id. at (b)(2)(B)-(C). "A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." Id. at (b)(2)(E)(i). "The production must then be completed no later than the time for inspection specified in the request or another reasonable time specified in the response." Id. at (b)(2)(B).

The scope of discovery under Rule 26(b) is extremely broad. See 8 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2007, 36-37 (1970) (hereinafter "Wright & Miller"). The reason for the broad scope of discovery is that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." 8 Wright & Miller, § 2007, 39 (quoting Hickman v. Taylor, 329 U.S. 495, 507-08, 67 S. Ct. 385, 392, 91 L. Ed. 2d 451 (1947)). The Federal Rules distinguish between discoverability and admissibility of evidence. FED. R. CIV. P. 26(b)(1), 32, and 33(a)(2) & (c). Therefore, the rules of evidence assume the task of keeping out

incompetent, unreliable, or prejudicial evidence at trial. These considerations are not inherent barriers to discovery, however.

The scope of discovery under Rule 45 is the same as the scope of discovery under Rule 26. Lureen v. Doctor's Assocs., Inc., 4:17-CV-04016-LLP, 2017 WL 4179995, at *3 (D.S.D. Sept. 20, 2017). The party seeking disputed discovery "must make a threshold showing that the requested information falls within the scope of discovery under Rule 26(b)(1)." Sprint Commc'ns Co. L.P. v. Crow Creek Sioux Tribal Ct., 316 F.R.D. 254, 263–64 (D.S.D. 2016) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)). "Mere speculation that information might be useful will not suffice; litigants seeking [disputed discovery] must describe with a reasonable degree of specificity the information they hope to obtain and its importance to their case." Id. at 264 (quoting E.E.O.C. v. Woodmen of the World Life Ins. Soc., No. 8:03-CV-165, 2007 WL 1217919, at *1 (D. Neb. Mar. 15, 2007)).

A court may quash a subpoena if it requires disclosure of privileged or other protected matter if no exception or waiver applies or if the subpoena subjects a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A). Alternatively, the court may order the documents to be produced if the requesting party shows substantial need for the documents that cannot be otherwise met without undue burden and the subpoenaed person will be reasonably compensation. Fed. R. Civ. P. 45(d)(3)(C).

7

The articulation of mere conclusory objections that something is "overly broad, burdensome, or oppressive," is insufficient to carry the resisting party's burden--that party must make a specific showing of reasons *why* the relevant discovery should not be had or *how* production of documents is unduly burdensom.  <u>Cincinnati Ins. Co. v. Fine Home Managers, Inc.</u>, 2010 WL 2990118, *1 (E.D. Mo. 2010); <u>Burns v. Imagine Films Entertainment, Inc.</u>, 164 F.R.D. 589, 593 (W.D.N.Y. 1996).  The party seeking to quash a subpoena bears the burden of demonstrating grounds for quashing it.  Charles A. Wright, Arthur R. Miller, Mary K. Kane, Richard L. Marcus, A. Benjamin Spencer, and Adam Steinman, 9A Fed. Prac. & Proc. Civ. § 2459 (3d ed. April, 2017) (hereinafter "Fed. Prac. & Proc. Civ.").

**C.     Relevancy**

The subpoena Gallagher served on ExamWorks requests the following categories of documents:

      1.     A report reflecting all referrals for an IME with Dr. Nipper on behalf of Gallagher for the last 10 years and for the geographic area comprising the Eighth Circuit (South Dakota, North Dakota, Minnesota, Nebraska, Iowa, Missouri, and Arkansas).

      2.     All IME reports that Dr. Nipper performed on any claim adjusted by Gallagher for the past 10 years within the Eighth Circuit.

      3.     All record review reports issued by Dr. Nipper on any claim adjusted by Gallagher for the past 10 years within the Eighth Circuit.

      4.     All IME reports for examinations that ExamWorks arranged with Dr. Nipper on any claim adjusted by Gallagher for the past 10 years in the Eighth Circuit.

See Docket No. 43-1 at p. 5.  The subpoena tells ExamWorks it "may" redact the name of the individual who was the subject of the IME, but requests that ExamWorks *not* redact the claim number assigned by Gallagher.  Id.

To prove a bad faith cause of action, plaintiff must show that defendants had no reasonable basis for denying his claim for insurance benefits and that defendants acted with knowledge or a reckless disregard as to the lack of a reasonable basis for the denial of benefits.  See Sawyer v. Farm Bureau Mut. Ins. Co., 2000 S.D. 144, ¶ 18, 619 N.W.2d 644, 649.

As set forth in the facts section of this opinion, plaintiff's theory of the case is central to Dr. Nipper.  Plaintiff alleges that defendants hired Dr. Nipper, knowing he had a "close" relationship with insurance companies and that he could be expected to issue an IME opinion that was favorable to defendants.  Thus, plaintiff implies that IME opinions from Dr. Nipper were not opinions that supplied defendants with a reasonable basis to deny plaintiff's claim for workers compensation benefits—a fact defendants knew or acted with reckless disregard to.

ExamWorks points to an opinion from this district where it claims evidence of opinions an IME doctor gave in other cases was held to be inadmissible at trial.  Docket No. 55 at pp. 1-2 (citing Thompson v. Nat'l. Union Fire Ins. Co. of Pittsburgh, Civ. No. 18-4011, 2021 WL 1966693 (D.S.D. May 17, 2021)).  This is a slight mischaracterization of the holding in Thompson.

In Thompson, the IME doctor had never previously been hired by the defendant insurance company prior to his being hired in plaintiff's case.

9

Thompson, 2021 WL 1966693 at *11. The court held that plaintiff could still pursue her theory that the insurance company acted recklessly in relying on the IME doctor's opinion to deny benefits (because the insurance company should have known the doctor was biased), but the court held that the plaintiff's expert witness would not be allowed to testify to allegedly biased opinions the IME doctor gave to insurance companies other than the defendant. Id. at *11, 17. Thus, the evidence of other IMEs the doctor had given *did not* involve the defendant in Thompson. Id.

Here, the evidence Gallagher is seeking concerns only those IME opinions given by Dr. Nipper *to defendants*. That distinguishes the evidence discussed in the Thompson case. Also, as explained above, the standard for admissibility of evidence at trial is not the standard for relevance at the discovery stage of a case. The latter is broader than the former. Thus, the holding in Thompson that plaintiff's expert witness would not be allowed to testify to IMEs the defendant's doctor had given to other insureds does not establish the principle that plaintiff was not entitled to *discovery* concerning those other IMEs. The court holds that Gallagher has satisfied its initial threshold burden to demonstrate that the subpoenaed documents are relevant.

**D.  Overbroad**

ExamWorks asserts that the subpoena is facially overbroad. Docket No. 43 at p. 6. Because the subpoena is allegedly facially overbroad, ExamWorks asserts it has no duty to support that assertion with an affidavit or any kind of factual showing. Id. at p. 7.

The court agrees with ExamWorks in one respect: the four categories of documents requested in the subpoena are not limited to IMEs or records reviews performed by Dr. Nipper for Gallagher *in workers compensation cases*. It may be that Gallagher only provides adjusting services in workers compensation claims. However, that is not stated explicitly by either Gallagher or ExamWorks. The court finds that the subpoena is overbroad if and only if it could require the production of documents associated with cases other than workers compensation claims. ExamWorks need only produce responsive documents in cases involving both Dr. Nipper and Gallagher and only in cases involving a workers compensation claim.

Otherwise, the court does not find the subpoena so broad as to lead to the conclusion that it is "facially" overbroad. Ten years is at the outside of what may be considered relevant, but not so much so that the court can conclude it is so overbroad as to require paring back with no showing of facts by ExamWorks. It is ExamWorks which bears the burden of demonstrating that there are grounds for quashing or modifying the subpoena. Simply asserting that something is "overbroad," without more, does not score the runner.

E.   **Undue Burden**

ExamWorks never states how many hours of effort by its employees will be required to comply with Gallagher's subpoena nor how much that compliance will cost. Instead, it simply argues that, since all categories of documents requested are in connection with IMEs originally requested by

11

Gallagher, Gallagher must—by definition—have access to the same documents and should be made to produce them instead of ExamWorks.

Gallagher explains in great detail why it cannot produce the documents itself.  Docket No. 51 at pp. 1-5.  Gallagher's records reflect the hiring of ExamWorks, not Dr. Nipper in particular.  Payments were made by Gallagher to ExamWorks, not to Dr. Nipper.  Id.  Gallagher's records cannot be electronically queried in order to locate claims files in which Dr. Nipper issued an IME at its request.  Id.  ExamWorks, as the party who paid Dr. Nipper, would have issued a 1099 or a W-2 to Dr. Nipper and can, by tracking those tax documents, identify cases in which Dr. Nipper issued IMEs for Gallagher.  Id.

By contrast, Gallagher explains that it opened 4.5 million workers compensation files for the 10-year period indicated in the subpoena.  Id. at p. 4.  Although presumably Gallagher could identify which of these files it hired ExamWorks in, it cannot identify which of the files in which ExamWorks was hired that Dr. Nipper was the physician assigned to perform the IME.  Id.  Gallagher would have to manually review each file to discover that information, a task it estimates would take 1 hour, six minutes for each file at a cost of $125.9 million for 5 million employee hours expended.  Id.  The court concludes that Gallagher has demonstrated facts to support its claim of undue burden.  ExamWorks has not carried its burden to do so.

In an effort to compromise the dispute over this subpoena, Gallagher offered to settle for simply a list or a data report from ExamWorks of the files

12

(including Gallagher's claim number) in which Dr. Nipper issued an IME for Gallagher.  Id. at p. 2.  Armed with such a list, Gallagher could then locate the responsive IMEs in its own files and could appropriately redact them and, presumably, disclose them to plaintiff.

The court will adopt Gallagher's offer of compromise and order that ExamWorks provide to Gallagher a list or data report (that includes Gallagher's claim number in the list) of all the matters on which Dr. Nipper has rendered an IME or a records review for Gallagher in the last ten years.

## CONCLUSION

Based on the foregoing facts, law, and analysis, it is hereby

ORDERED that ExamWorks' motion to quash [Docket No. 43] is granted in part and denied in part.  ExamWorks must provide to Gallagher a list or data report (that includes Gallagher's claim number in the list) of all the matters on which Dr. Nipper has rendered an IME or a records review for Gallagher in the last ten years.  ExamWorks must do so within 15 days from today's date.  ExamWorks need not comply at this time with other requests for documents contained in the subpoena.  Should Gallagher be unable to locate its own documents after provision of the list or data report, Gallagher may request that ExamWorks comply with the subpoena in its entirety.  Should that eventuality occur, it will be Gallagher's responsibility to appropriately redact the documents and information before providing the same to plaintiff.  Each party will bear their own attorney's fees in connection with this matter.

### NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law. The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless an extension of time for good cause is obtained. See FED. R. CIV. P. 72(a); 28 U.S.C. § 636(b)(1)(A). Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Id. Objections must be timely and specific in order to require review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED this 18th day of July, 2024.

BY THE COURT:

*Veronica L. Duffy*

VERONICA L. DUFFY
United States Magistrate Judge